**LOUIS SCHERZER PARTNERS, LP, Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Defendant.**

Civ. No. 94–1563–FR.

United States District Court, D. Oregon.

May 15, 1995.

Robert T. Scherzer, Portland, OR, for plaintiff.

Nancy K. Cary, William R. Turnbow, Hershner, Hunter, Moulton, Andrews & Neill, Eugene, OR, for defendant.

## OPINION

FRYE, Judge:

The matter before the court is the defendant's first motion for summary judgment (# 14).

## BACKGROUND

On May 30, 1989, the plaintiff, Louis Scherzer Partners, LP and the Federal Savings and Loan Insurance Corporation (FSLIC) entered into a Real Estate Purchase and Sale Agreement ("the Agreement").

Under the terms of the Agreement, Louis Scherzer Partners, LP agreed to purchase

from the FSLIC a parcel of property located in Clark County, Washington ("the Property"). Louis Scherzer Partners, LP intended to sell the Property or to develop it as commercial property.

With the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, the defendant, the Federal Deposit Insurance Corporation (FDIC), succeeded to all of the rights of the FSLIC under the terms of the Agreement.

In the Agreement, Louis Scherzer Partners, LP reserved the right to investigate the feasibility of using the Property for its intended purpose, i.e., to develop it as commercial property. The Agreement included the following provisions, in relevant part:

3. *Approval Period.* Purchaser shall have ninety (90) days from the date of mutual acceptance of this Purchase and Sale Agreement to perform its due diligence and give its approval to the purchase contemplated by this Agreement ("Approval Period"). Purchaser may terminate this Agreement by so notifying Seller in writing on or before the date of the expiration of the Approval Period. If Purchaser so terminates this Agreement, the Earnest Money Note shall be returned to Purchaser, and neither Purchaser and [sic] Seller shall have any further obligation toward the other. Purchaser shall be deemed to have approved the purchase contemplated by this Agreement if it fails to notify Seller in writing by the date of the expiration of the Approval Period of its intention to terminate this Agreement. . . .

. . . .

6. *Disclaimer.*

. . . .

SELLER MAKES NO REPRESENTATIONS OR WARRANTIES AND SHALL NOT IN ANY WAY BE LIABLE FOR ANY REPRESENTATIONS OR WARRANTIES, INCLUDING, WITHOUT LIMITATION, REPRESENTATIONS AND WARRANTIES WITH RESPECT TO: (I) THE CONDITION OF THE PREMISES OR ANY BUILDINGS, STRUCTURES OR IMPROVEMENTS THEREON OR THE SUITABILITY OF THE PREMISES FOR HABITATION OR FOR PURCHASER'S INTENDED USE OR FOR ANY USE WHATSOEVER; (II) ANY APPLICABLE BUILDING, ZONING OR FIRE LAWS OR REGULATIONS OR WITH RESPECT TO COMPLIANCE THEREWITH OR WITH RESPECT TO THE EXISTENCE OF OR COMPLIANCE WITH ANY REQUIRED PERMITS, IF ANY, OF ANY GOVERNMENTAL AGENCY; (III) THE AVAILABILITY OR EXISTENCE OF ANY WATER, SEWER OR OTHER UTILITIES (PUBLIC OR PRIVATE); (IV) THE EXISTENCE, ACCURACY, OR VALIDITY OF ANY DOCUMENTS WITH RESPECT TO THE PREMISES (INCLUDING, WITHOUT LIMITATION ... PERMITS ISSUED BY GOVERNMENTAL ENTITIES HAVING JURISDICTION OVER THE PREMISES ... OR SOIL REPORTS).... PURCHASER ACKNOWLEDGES TO SELLER THAT PURCHASER HAS FULLY INSPECTED THE PREMISES OR WILL DO SO PRIOR TO THE EXPIRATION OF THE APPROVAL PERIOD TO ITS FULL SATISFACTION, AND PURCHASER ASSUMES, AS OF CLOSING, THE RESPONSIBILITY AND RISK OF ALL DEFECTS AND CONDITIONS, INCLUDING SUCH DEFECTS AND CONDITIONS, IF ANY, THAT CANNOT BE OBSERVED BY CASUAL INSPECTION.

10. *Further Inspection.* Purchaser acknowledges that Purchaser is relying on its own examination and inspection of all matters with respect to taxes, bonds, permissible uses, zoning, covenants, conditions and restrictions and all other matters bearing upon the value of the Premises in Purchaser's judgment and for Purchaser's purposes, and not on any representations of Seller or of Seller's agents or employees, and Purchaser waives any claim on that account.

Real Estate Purchase and Sale Agreement, pp. 3–7.

On June 29, 1990, Louis Scherzer Partners, LP signed a Promissory Note and Trust Deed, and the sale of the Property closed in July of 1990.

Several years later, Clark County and the State of Washington adopted ordinances and regulations protecting wetlands. Louis Scherzer Partners, LP alleges that these ordinances and regulations substantially limit its intended use of the Property.

On August 26, 1994, Louis Scherzer Partners, LP filed this action seeking rescission of the Agreement. In the complaint, Louis Scherzer Partners, LP alleges that Louis Scherzer Partners, LP and the FDIC (1) were mutually mistaken in a belief that the Property could be fully developed as commercial property; and (2) that the purpose of Louis Scherzer Partners, LP in buying the Property for commercial development was frustrated.

## CONTENTIONS OF THE PARTIES

The FDIC contends that Louis Scherzer Partners, LP cannot prevail on its claim for rescission because Louis Scherzer Partners, LP bore the risk of mistake and frustration of purpose. The FDIC contends that under the provisions of law and by the terms of the Agreement, Louis Scherzer Partners, LP assumed the risk of mistake and frustration of purpose.

Louis Scherzer Partners, LP contends that it did not assume the risk of mistake and frustration of purpose because the Agreement is silent as to the impact of future events. Louis Scherzer Partners, LP contends that there are issues of material fact as to the understanding and intent of the parties as to how the purchase price was determined.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553.

## ANALYSIS

In order to prevail on its claim for rescission, Louis Scherzer Partners, LP must prove that it does not bear the risk of mutual mistake and frustration of purpose. *Scott v. Petett*, 63 Wash.App. 50, 816 P.2d 1229, 1234 (1991).

The basic elements of a claim of mutual mistake and frustration of purpose are set out in *Restatement (Second) of Contracts* §§ 152, 154 and 265 as follows:

§ 152. *When Mistake of Both Parties Makes a Contract Voidable*

(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

§ 154. *When a Party Bears the Risk of a Mistake*

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

§ 265. *Discharge by Supervening Frustration*

Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event and the nonoccurrence of which

was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

In *Scott*, a purchaser bought property intending to use the property for truck storage, an office, and a shop and was aware that a rezoning of the property was required for this intended use. The contract gave the purchaser ninety days to determine the physical and practical feasibility of using the property for industrial development. The purchaser had the right to terminate the contract during this ninety-day period if he determined the property could not be used as intended.

Despite the fact that the rezoning was not complete, the purchaser decided to complete the purchase. Shortly after the transaction closed, the purchaser learned that most, and possibly all of the property, contained wetlands.

The purchaser brought an action for rescission alleging that the parties were mutually mistaken, and that his purpose in buying the property was frustrated. The Court of Appeals for the State of Washington affirmed the grant of summary judgment against the purchaser on these claims explaining that:

There is no mutual mistake ... because all risks involving zoning and "the physical and practical feasibility of using the subject real property for industrial development" were allocated to Scott by the contingency clause in the purchase and sale agreement.

The contingency clause gave Scott, in his sole discretion, the right to withdraw from the transaction if the deadline ... was reached and he was not satisfied with the feasibility of using the property for his intended use of industrial development.

The clear allocation of this risk to Scott defeats, as a matter of law, his claim of mutual mistake.

. . . .

... [T]he doctrine of frustration does not apply if the contract between the parties disclosed an allocation of that risk to one party or the other.

The contingency clause gave Scott 90 days in which to make a determination as to the physical and practical feasibility of using the subject real property for industrial development. Scott's claim of commercial frustration is based upon difficulties which developed in respect to obtaining the necessary permits for industrial development of the property. This is precisely the risk that was the subject of the contingency clause. The trial court correctly ruled as a matter of law that the purchase and sale agreement allocated that risk to Scott. Accordingly, he has no claim of frustration of purpose.

*Scott*, 816 P.2d at 1235–36.

In this case, the Agreement gave Louis Scherzer Partners, LP ninety days to perform its due diligence investigation and to give its approval to the purchase; Louis Scherzer Partners, LP could have terminated the Agreement within this ninety-day period without further obligation to the FDIC; the FDIC made no representations or warranties as to zoning or other conditions of the Property; Louis Scherzer Partners, LP presumably inspected the Property prior to closing; and Louis Scherzer Partners, LP assumed, as of closing, the responsibility and the risk of all defects and conditions, including such defects and conditions, if any, that could not be observed by casual inspection.

Louis Scherzer Partners, LP contends that the Agreement is silent as to the risk of future events. However, the provisions of the Agreement clearly shift the risk that several years after the closing of the sale of the Property, state and local authorities could adopt more restrictive regulations that would reduce the developable usable acreage of the Property. There was no mutual mistake in this case because all risks involving the zoning and the conditions of use of the property after closing were shifted by the Agreement to Louis Scherzer Partners, LP.

Louis Scherzer Partners, LP contends that there is no language in the Agreement to suggest that either party was assuming the risk of a supervening impracticability or a later frustration in the purpose of the purchaser. However, the purchaser in this case, Louis Scherzer Partners, LP, had ninety

days to "give its approval to the purchase contemplated by this Agreement," and as of closing the "responsibility and risks of all defects and conditions" were assumed by Louis Scherzer Partners, LP. Agreement, ¶¶ 3, 6. Even if Louis Scherzer Partners, LP can demonstrate that its purpose either to sell the Property or to develop it as commercial property was frustrated or impracticable, the Agreement allocated that risk to Louis Scherzer Partners, LP. The FDIC is entitled to judgment in its favor.

## CONCLUSION

The FDIC's first motion for summary judgment (# 14) is granted. Judgment will be entered for the FDIC.

## ORDER

IT IS HEREBY ORDERED that defendant's first motion for summary judgment (# 14) is GRANTED. Judgment will be entered for the defendant.

## JUDGMENT

IT IS HEREBY ORDERED AND AD-JUDGED that judgment is entered in favor of the defendant and against the plaintiff.